# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TRULIANT FEDERAL CREDIT UNION, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | 1:23CV556 |
| v. | ) ) | |
| BETHPAGE FEDERAL CREDIT UNION AND BETHPAGE COMMERCIAL, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff, Truliant Federal Credit Union, (hereinafter "Plaintiff"), brought suit against Defendants, Bethpage Federal Credit Union and Bethpage Commercial, LLC (hereinafter collectively "Bethpage"), asserting various contract claims, tort claims, and North Carolina unfair and deceptive trade practices claims, or, in the alternative, seeking declaratory relief. (ECF No. 41.) In addition, Bethpage (hereinafter "Defendants") asserted counterclaims against Plaintiff seeking declaratory relief. (ECF No. 42.) Before the Court is Defendants' Motion for Summary Judgment on all of Plaintiff's claims, (ECF No. 52), and Plaintiff's Motion for Partial Summary Judgment, (ECF No. 54). For the reasons stated herein, Defendants' motion is granted in part and denied in part, and Plaintiff's partial motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff is a federally chartered credit union, recognized and existing under federal law, who maintains its principal place of business in Winston-Salem, which is located in this District in Forsyth County, North Carolina. (ECF No. 41 ¶ 3.) Defendant Bethpage Federal Credit Union is a federally chartered credit union, recognized and existing under federal law, who maintains its principal place of business in New York. (ECF Nos. 41 ¶ 4; 42 ¶ 4.) Defendant Bethpage Commercial, LLC is a limited liability corporation organized under the laws of New York, with its principal place of business in New York. (ECF No. 42 ¶ 5.) The amount in controversy is over $75,000. (*See* ECF No. 41 ¶¶ 115–60.) Neither party disputes that this Court has jurisdiction over the parties or the subject matter of this dispute. 28 U.S.C. § 1332(a)(1).

On January 14, 2021, Defendants entered into an agreement with S College Lessee, LLC, now known as S College LLC (hereinafter "the Borrower"). (ECF Nos. 52-2 at 27; 52-12 at 127:23-25.) Per the terms of the agreement, Defendants loaned Borrower $60 million for a long-term ground lease for a commercial property located at 200 South College Street in Charlotte, North Carolina (hereinafter "the Loan"). (ECF No. 52-2 at 27.) The Loan was secured by a personal guaranty made by Yaakov Prager (hereinafter "the Guarantor"). (ECF Nos. 52-5 at 57:12-19, 60:20-24; ECF No. 61-32 at 1; *see also* ECF No. 52-6 at 20:14–21:9.) Borrower also put up the commercial property at 200 South College Street as collateral to secure the loan (hereinafter "Collateral Property"). (ECF No. 52-5 at 57:12-16.) Tenants of the Collateral Property, including Truist Bank, rented commercial space, and the tenants' rent payments were considered proceeds of the Loan. (ECF No. 55-4 at 115:5-16; *see also* ECF No. 55-3 at 216:5-9.)

The Loan was a "Member Business Loan," meaning several financial entities purchased a percentage of Defendants' "interest" in the Loan. (ECF No. 52-2 at 1.) The rights of these additional lenders (hereinafter "Participant Lenders") are governed by a contract, entitled the Master Loan Participation Agreement (hereinafter "MLPA").[1] (*Id.* at 2 § 2.) Defendants operated as the "Lead Lender" in the MLPA, maintaining approximately a 16.666% interest in the Loan. (*Id.* at 1.) On January 22, 2021, Plaintiff purchased an 8.333% interest in the loan for $5 million as a Participant Lender. (*Id.* at 27.)

On September 15, 2021, Truist Bank notified Borrower that it would be terminating its lease at the Collateral Property, vacating on February 18, 2022, and exercising its option to pay Borrower an early termination fee. (ECF No. 52-6 at 114:25–115:4.) On December 21, 2021, Truist Bank paid the early termination fee to Borrower in the amount of $13,944,941.09; this amount was deposited by wire transfer into Borrower's business checking account, which was a Bethpage Federal Credit Union account owned by Guarantor. (*Id.* at 114:25–115:7; ECF No. 52-4 at 3.) By December 27, 2021, nearly the entirety of the value of the early termination fee had been withdrawn from Borrower's account via wire transfers. (ECF No. 52-4 at 3, 5.) The terms of the Loan required Borrower to deposit early termination fees into a reserve account for the benefit of the lenders but none of the money was withdrawn for that purpose. (ECF No. 52-5 at 69:9-21; *see also* ECF No. 52-4 at 3–5.) At the time, some of the wire transfers generated "flags" for suspicious activity; however, in response, Bethpage Federal Credit Union employees verified that the transfers were not fraudulent, but did not conduct additional investigation. (ECF Nos. 61-7 at 65:19-21, 67:4–69:2, 72:25–7325; 61-8 at 1, 2, 4.)

---

[1] The operative MLPA is the amended MLPA, this amendment is not material to the instant dispute and was done on the same day the unamended MLPA was signed. (ECF No. 52-2 at 27–28.)

On January 18, 2022, a representative for Plaintiff first inquired about the timeline for the Loan's 2022 annual review, which the Defendants were expected to complete internally with assistance from an outside contractor. (ECF No. 52-5 at 11:17–12:8, 16:11–18:12, 23:24–24:2; *see also* ECF No. 61-14.) Defendants responded that the annual review would happen later in the year. (ECF No. 61-14 at 4.) Plaintiff Truliant's representative reached out twice more, on September 6 and October 14 of 2022. (*Id.* at 2–3.) In response to the latter message, Defendants stated that a "mini annual review" had been completed, which, among other things, stated that Truist Bank was still a tenant at the Collateral Property. (ECF Nos. 61-15 at 1; 61-16 at 3.)

On March 7, 2023, Plaintiff Truliant reached out to Defendants again to ask for the complete 2022 annual review, which Defendants uploaded to the Participant Lenders' server shortly thereafter. (ECF No. 61-19 at 2.) The annual review still represented that Truist Bank was a tenant at the Collateral Property. (ECF Nos. 61-3 ¶ 5; 52-5 at 150:15–151:1; *see also* ECF No. 61-1 at 109:12–110:1.) On March 10, 2023, a Participant Lender who is not party to this suit emailed Defendants about an approximate $13.6 million variance in the rents and leases for the Collateral Property that it discovered by reviewing the annual review documents. (ECF No. 61-21 at 1.) Defendants only became aware of the variance because of this email. (ECF Nos. 55-3 at 146:24–147:18; 52-5 at 109:23–110:13.) The record does not reflect that Defendants notified the other Participant Lenders about this variance or Truist's vacancy until March 27, 2023. (ECF No. 61-23.)

On March 27, 2023, Plaintiff Truliant requested that Defendants meet with them and other Participant Lenders. (ECF No. 61-22 at 2–3.) Defendants refused to meet at that time. (*Id.* at 1–2.) On April 6, 2023, Bethpage Federal Credit Union sent a notice of default to

4

Borrower and Guarantor.  (ECF No. 52-7 at 1–2.)  On April 7, 2023, a representative for Plaintiff was permitted participate in a Webex meeting where Defendants' employees discussed the next steps for the Loan.  (ECF No. 61-28 ¶¶ 3, 4–5; *see also* ECF No. 55-1 at 92:16–93:25.)  On that call, Plaintiff's representative asked why Defendants were not pursuing foreclosure and was told at that time that Defendants had other financial relationships with Borrower that they wished to protect.  (ECF No. 55-1 at 96:8–97:5; *see also* ECF Nos. 61-28 ¶ 4; 55-3 at 195:14-19, 196:1–197:16.)  The record does not reflect that this meeting included all Participant Lenders or that the Participant Lenders were formally consulted in the event of Borrower's default.

Negotiations about the Default ensued between Defendant, the Borrower, and the Guarantor for several months; periodic updates were sent to the Participant Lenders.  (ECF Nos. 52-7 at 1–2; 52-8 at 1; 52-9 at 1, 2–3, 4–5.)  On August 11, 2023, Defendants advised the Participant Lenders that tentative terms of forbearance agreements had been reached with Borrower and Guarantor and asked the Participant Lenders to vote on either approving or disapproving those tentative terms.  (ECF No. 52-10 at 1–2, 3.)  On August 25, 2023, Defendants advised the Participant Lenders that the proposed terms were approved by the majority of the participants in the loan.  (ECF No. 52-11 at 1.)  However, Defendants continued to negotiate with Borrowers until November 2023.  (ECF No. 55-4 at 66:18–67:2, 275:6-11, 301:8-16, 302:12–3032:2.)  On December 14, 2023, Defendants recommended foreclosure on the Loan and a foreclosure sale of the Collateral Property occurred in May 2024.  (*Id.* at 66:16–67:20, 303:15-18; ECF No. 155:13-21; *see also* ECF Nos. 55-1 at 149:1–150:11; 55-4 at 303:15-18.)

5

On July 5, 2023, Defendants removed this case from Forsyth County Superior Court to this District, invoking this Court's diversity jurisdiction. (ECF No. 1.) On the same day, Plaintiff filed its initial complaint against Defendants, which Defendants answered on August 8, 2023. (ECF Nos. 6; 10.) The parties made several amended filings, but on May 9, 2024, Plaintiff filed the operative complaint, the Second Amended Complaint (hereinafter "the Complaint"). (ECF No. 41.) The Complaint brought six claims against Defendants as follows: Breach of Contract, Breach of Fiduciary Duty, Breach of Warranty, Breach of the Implied Duty of Good Faith and Fair Dealing, Negligent Misrepresentation, and Unfair and Deceptive Trade Practices under North Carolina law, codified at N.C. GEN. STAT. § 75-1.1 (hereinafter "UDTPA"). (*Id.* ¶¶ 115–60.) Plaintiff also made a claim in the alternative for a declaratory judgment to validate its interpretation of the terms of the MLPA. (*Id.* ¶¶ 161–65.) On May 23, 2024, Defendants filed their Answer to the Complaint with Counterclaims for Declaratory Judgment (hereinafter "the Counterclaim"), (ECF No. 42), seeking to validate their interpretation of the terms of the MLPA and declare that they have complied with the MLPA's terms, which Plaintiff answered on June 6, 2024. (ECF Nos. 42 ¶¶ 27–35; 43.)

Following discovery, Defendants filed their Motion for Summary Judgment on November 22, 2024. (ECF No. 52.) On the same day, Plaintiff filed its Motion for Partial Summary Judgement on only its Breach of Contract claim and requested that the Court declare Defendants must comply with the audit requirements of the MLPA. (ECF No. 54.)

## II.    CHOICE OF LAW

Defendants argue that because the MLPA contains a New York choice of law provision, all of Plaintiff's claims must be governed by New York law. (ECF No. 53 at 10 (citing ECF No. 52-2 at 17 § 22.4).) Plaintiff agrees that New York law applies in evaluating

6

its contract claims, however, Plaintiff argues that its negligent misrepresentation and UDTPA claims are governed by North Carolina law. (ECF No. 62 at 11–12.)

A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules. *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)). In North Carolina, "matters affecting the substantial rights of the parties are determined by *lex loci*, the law of the situs of the claim, and remedial or procedural rights are determined by *lex fori*, the law of the forum." *Izzy Air, LLC v. Triad Aviation, Inc.*, 2022-NCCOA-523, ¶ 10, 877 S.E.2d 65, 69 (N.C. Ct. App. 2022) (quoting *Boudreau v. Baughman*, 368 S.E.2d 849, 853–54 (1988)). For contract claims, a valid choice of law provision in a contract is "generally binding on the interpreting court," and the chosen state's law determines the substantive law of the claims. *Wall v. Automoney, Inc.*, 2022-NCCOA-498, ¶ 24, 877 S.E.2d 37, 48 (quoting *Behr v. Behr*, 266 S.E.2d 393, 395 (N.C. Ct. App. 1980)). For tort claims, "the state where the injury occurred is considered the situs of the claim" and determines the substantive law that applies. *Harco Nat. Ins. Co. v. Grant Thornton LLP*, 698 S.E.2d 719, 722 (N.C. App. 2010) (quoting *Baughman*, 368 S.E.2d at 854).

The parties agree that New York substantive law applies to the interpretation of the contract but disagree about whether North Carolina or New York substantive law applies for the claims that arise in tort. (ECF Nos. 53 at 10; 62 at 11.) Defendants ask this Court to choose New York law based on principles of that state's contract law. (ECF No. 53 at 10.) However, to determine the substantive law of Plaintiff's tort claims, this Court must examine the choice of law rules of North Carolina to assess which state's substantive law applies. *Volvo*,

386 F.3d at 599–600 (citing *Erie*, 304 U.S. at 79; *Klaxon*, 313 U.S. at 496). As stated above, in North Carolina, *lex loci delicti*, applies in tort actions. *Harco*, 698 S.E.2d at 722 (quoting *Baughman*, 368 S.E.2d at 854). Therefore, because Plaintiff's alleged tort injuries occurred in North Carolina, its law applies to Plaintiff's claims arising in tort.

Accordingly, this Court will apply New York law to the Plaintiff's first four claims: Breach of Contract, Breach of Fiduciary Duty, Breach of Warranty, and Breach of the Duty of Good Faith and Fair Dealing. Plaintiff's Negligent Misrepresentation claim and UDTPA claim will be governed by North Carolina law.

## III.    THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

### A.    Standard of Review for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotations omitted) (internal citations omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the nonmoving party would prevail at trial. *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (internal quotation marks omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

8

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (additional citation omitted). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B); *see also Celotex*, 477 U.S. at 324.

## B. Discussion

Defendants argue that the undisputed facts entitle them to judgment as a matter of law on all counts because their actions were validated or exculpated by the terms of the MLPA. (ECF No. 53 at 4.) Plaintiff argues in response that the record evidence supports its claims and genuine issues of fact remain to be resolved by the jury. (ECF No. 62 at 12.) Plaintiff further argues it is entitled to partial summary judgment on its breach of contract claim. (ECF No. 55 at 13.)

### 1. Plaintiff is Entitled to Judgment as a Matter of Law on its Breach of Contract Claim

Defendants argue that no genuine issues of fact exist about whether they complied with the terms of the MLPA and therefore they are entitled to summary judgment on Plaintiff's

9

breach of contract claim. (ECF No. 53 at 11.) Plaintiff argues in response that the record evidence supports its claim that Defendants breached multiple provisions of the MLPA. (ECF No. 62 at 12 (citing ECF No. 52-2 at 4 § 7.1, 6 § 7.5, 6–7 § 7.7, 7–8 § 7.9, 11–12 § 10(a), 12 § 11, 13 § 13).) Plaintiff further argues this Court should grant summary judgment in its favor on this claim with respect to Defendants failure to respond to its August 3, 2023, written audit request. (ECF No. 55 at 13.)

Under New York law, a breach of contract claim requires a showing that: "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages."[2] *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (citations omitted); *accord Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 167 (S.D.N.Y. 2024) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)) (additional citations omitted).

Because of the number of allegations and the complexity of the MLPA, the Court first summarizes Plaintiff's allegations of breach of contract identified in the Complaint. Plaintiff's Complaint alleges the Defendants' breaches of contract included, but were not limited to, violations of seven sections of the MLPA: § 7.1 (Defendants' obligation to hold Loan documents, receipts, and collections for the Loan), § 7.5 (Defendants' exclusive powers under the MLPA), §§ 7.7 and 7.9 (Defendants' obligations to notify and consult with a Participant Lender in the event of Borrower's default), § 10(a) (Defendants' obligations to cooperate and participate in a Participant Lender's audit request), § 11 (Defendants' obligations to provide Borrower's financial and non-financial information to a Participant Lender when requested),

---

[2] It is uncontested that a valid binding contract exists between the parties. (ECF Nos. 53 at 11; 62 at 12–14.) It is further not disputed that Plaintiff performed in accordance with the contract by paying for its participant share and abiding by the terms of the MLPA. (ECF Nos. 53 at 11; 62 at 12–14.)

and § 13 (Defendants' duty to exercise the same care to protect the interest of the Participant Lender as it uses to protect its own interest).  (ECF No. 1 ¶ 117 (citing ECF No. 52-2 at 4 § 7.1, 6 § 7.5, 6–7 § 7.7, 7–8 § 7.9, 11–12 § 10(a), 12 § 11, 13 § 13).)

Defendants rebut these allegations by stating that its actions were at all times consistent with the MLPA but provides limited evidence to support this conclusion.  (ECF Nos. 53 at 11; *see generally* ECF No. 66.)  Defendants' evidence includes only references to the terms of the MLPA and the results of the August 2023 Participant Lenders vote.  (*Id.* (citing ECF Nos. 52-2 at 6 § 7.5; 52-10 at 1–2); *see also* ECF No. 52-11 at 1.)  In addition, Defendants argue that, in accordance with the plain terms of the MLPA, Plaintiff Truliant's input was solicited to the extent required but they were not required to follow Plaintiff Truliant's suggestions when addressing Borrower's default.  (ECF No. 66 at 5 (citing ECF Nos. 52-2 at 6 § 7.5; 52-11 at 1); *see also* ECF No. 52-2 at 6 § 7.6(b).)  Defendants also argue that because it is undisputed that they did not know about Truist Bank's vacancy and early termination until March 2023, they had no obligation to inform Participants Lenders of such information before then.  (*See* ECF No. 53 at 11.)

First, these arguments are not directly responsive to Plaintiff's allegations of breach because Defendants do not cite to particular parts of the record to demonstrate that they did not engage in the wrongdoing they are accused of; instead, they simply use conclusory statements to deny wrongdoing.  (*Compare* ECF No. 41 ¶ 117 (citing ECF No. 52-2 at 4 § 7.1, 6 § 7.5, 6–7 § 7.7, 7–8 § 7.9, 11–12 § 10(a), 12 § 11, 13 § 13) *with* ECF No. 53 at 11.)  Defendants must use record evidence to support that there is an "absence of evidence" in support of Plaintiff's claim, not simply declare Plaintiff's evidence to be lacking.  *Celotex Corp. v. Catrett*, 477 U.S. at 325.  Therefore, Defendants have not met their initial burden to show, as the

11

movant for summary judgment, that they are entitled to judgment as a matter of law. *See id.* In contrast, Plaintiff, as non-movant, points to record evidence that there continue to be genuine issues of fact that in dispute. (ECF No. 62 at 12–14.) Plaintiff Truliant shows that factual questions remain to include: (1) whether Defendants knew or should have known about Truist Bank's vacancy and termination fee; (2) whether Defendants considered Plaintiff Truliant's suggestions in the event of Borrower's default; and (3) whether the Defendants withheld material information about Borrower and Guarantor before the Participant Lenders were asked to vote on a forbearance agreement. (ECF No. 62 at 13–14.) The breadth of the record evidence presented to this Court by Plaintiff Truliant evinces that Defendants failed to show that they are entitled to summary judgment on Plaintiff Truliant's breach of contract claim.

In addition, Plaintiff's partial motion for summary judgment on its breach of contract claim is based on its proffered evidence of Defendants' breach of the terms of § 10(a) of the MLPA. (ECF No. 55 at 11, 14–18.) Section 10(a) outlines Defendants' obligations when Plaintiff exercises its right to request an audit of Defendants' "books and records" pertaining to the Loan. (ECF No. 52-2 at 11–12 § 10(a).) This provision unambiguously requires Defendants to make its books and records related to the Loan available to Plaintiff, Truliant, and to "cooperate with Participant in any review or audit conducted by Participant." (*Id.* at 11 § 10(a).) There are no exceptions to this requirement other than a temporal limitation, which allows Plaintiff to request an audit only once a year. (*Id.*)

Undisputed record evidence reflects that on August 3, 2023, a representative for Plaintiff requested an audit of Defendants' books and records related to the Loan pursuant to § 10(a) of the MLPA. (ECF No. 55-2 at 1; *see also* ECF No. 57 ¶ 7.) Defendants did not

respond to this request. (ECF No. 57 ¶ 8.) On August 21, 2023, Plaintiff's representative emailed Defendants a second time regarding its audit request. (ECF No. 57-1 at 3–4; *see also id.*) Defendants' representative responded that it had already provided several documents to Participant Lenders and also declined to provide additional documents. (ECF Nos. 57-1 at 3–4; 57 ¶¶ 9–10.) On August 28, 2023, Defendants again requested a full audit and stated that it would presume Defendants were rejecting the audit request if they did not respond. (ECF Nos. 57-1 at 2–3; 57 ¶ 11.)

On September 18, 2023, representatives for Plaintiff emailed Defendants again, including examples of the documents it wished to review through the audit and asked for arrangements to be made for an audit by 5:00 PM on September 22, 2023. (ECF Nos. 57-1 at 3–4; 57 ¶ 12.) On September 26, 2023, Counsel for Defendants responded by letter that they had already produced some of the documents Plaintiff requested and would produce additional documents for Plaintiff. (ECF Nos. 57-2 at 1–2; 57 ¶¶ 14, 15.) When those documents were not produced, Plaintiff followed up about the production of these additional documents twice in December of 2023. (ECF Nos. 57-3 at 2; 57-4 at 2; 57 ¶¶ 16, 17.) Many of these requested documents only became available to Plaintiff through discovery and by Order of this Court. (ECF Nos. 32 at 1, 2; 34 ¶¶ 9–10, 12–13.)

Defendants do not contest that Plaintiff properly requested an audit but argues that it was not obliged to provide documents that it did not consider to be "books and records" under the terms of the MLPA, a proposition for which no MLPA language is cited to support. (ECF No. 65 at 11, 12–13, 14–15.) Defendants further argue that the express terms of the MLPA state no timeline for when Defendants must comply with an audit request, and consequently they could not have violated § 10(a) of the MLPA. (*Id.* at 13–14.)

Despite Defendants' arguments, there is no dispute that Defendants declined to produce the documents requested by Plaintiff for an audit without authority under the MLPA to do so, furthermore, some of those documents were not produced until Defendants were compelled to do so by this Court. (ECF No. 32 at 1, 2.) Accordingly, this Court concludes that Plaintiff has met its burden of showing that there is no genuine issue of material fact about whether Defendants violated § 10(a) of the MLPA. Plaintiff is entitled to judgment as a matter of law on its claim of breach of contract on those grounds.

2. <u>Defendants Fail to Show That They are Entitled to Judgement as a Matter of Law on Plaintiff's Breach of Fiduciary Duty Claim</u>

Defendants argue they are entitled to summary judgment because § 22.2 of the MLPA disavows that the parties had a fiduciary relationship or that Defendants were obligated to hold Loan payments in trust. (ECF No. 53 at 9, 12–14 (citing ECF No. 52-2 at 17 § 22.2).) Plaintiff argues in response that the MLPA does not disavow a fiduciary relationship between the parties, and the record evidence supports its claim that Defendants breached their fiduciary duties by not discovering Truist Bank's vacancy and early termination fee to Borrower. (ECF No. 62 at 14–15 (citing ECF No. 52-2 at 4 § 7.1, 13 § 13, 17 § 22.2), 15–16.)

Under New York law, a viable breach of fiduciary duty claim requires: "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (quoting *U.S. Fire Ins. Co. v. Raia*, 94 A.D.3d 749, 751 (N.Y. App. Div. 2012) (internal citation omitted)); *accord Amici v. Mazza*, 234 A.D.3d 1170, 1173 (N.Y. App. Div. 2025) (citations omitted). Questions of fact as to any of these elements preclude summary judgment on a breach of fiduciary duty claim. *See, e.g., Cont'l Indus. Grp., Inc. v. Ustuntas*, 211 A.D.3d 601, 602 (N.Y. App. Div. 2022).

Case 1:23-cv-00556-LCB-JEP    Document 73    Filed 04/08/25    Page 14 of 26

The primary basis for Defendants' argument for summary judgment is § 22.2 of the MLPA, which Defendants claim is "unequivocal." (ECF No. 53 at 12.) However, the plain language of this section states that Defendants "shall not have a fiduciary duty of any kind to Participant, except to the extent that Lead Lender expressly agrees herein to hold the Loan Documents or the proceeds of the Loan in trust." (ECF No. 52-2 at 17 § 22.2.) Here, Defendants, as the Lead Lender, expressly agree to hold the Loan documents and proceeds in trust for the Participant Lenders, including Plaintiff. (*Id.*) Accordingly, this Court finds that the record supports Plaintiff's contention that there was an express fiduciary relationship with itself and the other Participant Lenders. (*Id.*) To prevail, Defendants must now show the fiduciary duties Plaintiff claims have been breached and are not those that were expressly created by § 22 of the MLPA. *See Ustuntas*, 211 A.D.3d at 602.

To that end, Defendants argue that they only agreed to hold the Loan documents in trust, not Loan payments like the early termination fee. (ECF No. 53 at 13.) The MLPA does not distinguish between Loan documents and payments; the MLPA *does* state that Defendants had a contractual duty to hold both Loan documents and Loan proceeds in trust. (ECF No. 52-2 at 17 § 22.2.) A reasonable juror could find that the record evidence supports the conclusion that an early termination fee is a Loan proceed. (*Id.*; ECF No. 52-5 at 69:9-21; *see also* ECF No. 52-4 at 3–5.) Thus, this Court finds Defendants' arguments on the distinction between Loan documents and payments to be unconvincing.

This Court also concludes there is evidence to support Defendants may have breached express fiduciary duties, by not knowing of, or discovering Truist's early termination fee, when Defendants' stated policies and procedures provide that Defendants should have discovered the termination fee. (ECF Nos. 61-7 at 65:19-21, 67:4–69:2, 72:25–7325; 61-8 at 1, 2, 4; *see*

15

*also* ECF No. 62 at 15–16.) For these reasons, Defendants have failed to show that they are entitled to judgment as a matter of law since genuine issues of material fact remain. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's Breach of Fiduciary Duty claim.

        3.       <u>Defendants Fail to Show that They are Entitled to Judgment as a Matter of Law on Plaintiff's Breach of Warranty Claim</u>

Defendants next argue that §§ 2 and 13 of the MLPA precludes their liability on Plaintiff's breach of warranty claim. (ECF No. 53 at 14 (citing ECF No. 52-2 at 2 § 2, 13 § 13), 15.) Plaintiff argues in response that the relevant portions of the MLPA do not disavow all representations and warranties made by Defendants that were in connection with or arose outside of the MLPA. (ECF No. 62 at 17 (citing ECF No. 52-2 at 13 § 13).) Further, Plaintiff argues that the record reflects that factual questions remain about whether Defendants' actions triggered the MLPA's express warranties. (*Id.*)

Under New York law, a breach of express warranty claim requires "(i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach."[3] *Haft v. Haier US Appliance Sols., Inc.*, 578 F. Supp. 3d 436, 450 (S.D.N.Y. 2022) (quoting *Avola v. Louisiana–Pacific Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013) (citing *CBS Inc. v. Ziff–Davis Pub. Co.*, 553 N.E.2d 997, 1000–01 (1990)) (internal quotation marks omitted). Summary judgment must be granted when it is established that a cause of action is barred by valid exculpatory provisions in a contract. *Lenoci v. Secure Alarm Installations, LLC*, 97 A.D.3d 800, 801 (N.Y. App. Div. 2012) (citing *Colnaghi, U.S.A., Ltd. v.*

---

[3] Defendants do not contest that Plaintiff suffered an injury as a result of the alleged breach. (ECF No. 53 at 14–15.)

*Jewelers Protection Servs.*, 611 N.E.2d 282, 283 (N.Y. 1993); *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1370 (N.Y. 1992)) (additional citations omitted). However, to the extent that a Plaintiff has breach of warranty claims that fall outside of the exculpatory terms of the contract, the contractual limitation of liability does not apply. *See Sjogren v. Bd. of Trs. of Dutchess Cmty. Coll.*, 216 A.D.3d 836, 837–38 (2023) (citations omitted); *see also Sommer*, 593 N.E.2d at 1370 (citations omitted); *Metro. Prop. & Cas. Ins. Co. v. Budd Morgan Cent. Station Alarm Co.*, 95 F. Supp. 2d 118, 124 (E.D.N.Y. 2000).

Section 2 of the MLPA states in relevant part: "The sale of a Participating Interest is made by Lead Lender without recourse, representation or warranty of any kind, either expressed or implied, except as may otherwise be expressly set forth in this Agreement." (ECF No. 52-2 at 2 § 2.) Similarly, Section 13 of the MLPA states in relevant part:

> "Lead Lender . . . shall [not] be liable to Participant for any obligation, undertaking or judgment of Borrower, any guarantor or any other person, or for any error of judgment or any action taken or omitted to be taken by Lead Lender (except and only to the extent that the same arises directly and solely from gross negligence or willful misconduct by Lead Lender)."

(ECF No. 52-2 at 13 § 13.)

This Court finds §§ 2 and 13 of the MLPA are not absolute, with the latter expressly allowing Plaintiff to make allegations regarding Defendants' "errors of judgment" and "action[s] taken or omitted" that arise from their "gross negligence and willful misconduct." (ECF No. 52-2 at 13 § 13.) These are express exceptions reflected in the terms of § 13 of the MLPA. (ECF No. 52-2 at 13 § 13.) Standing alone, the exceptions in § 13 of the MLPA rebut Defendants' argument that the MLPA unequivocally precludes liability on breach of warranty grounds. (ECF No. 53 at 14.) Moreover, New York law suggests that even just the exceptions in § 13 of the MLPA alone amount to Defendants making a "material statement amounting

17

to a warranty." *Haft*, 578 F. Supp. 3d at 450. Further, these express warranties, against gross negligence and willful misconduct on Defendants' part were a part of the basis of their bargain with Plaintiff. *Id.*

As to whether there is sufficient evidence of breach of the MLPA's express warranties, Defendants argue Plaintiff Truliant's evidence—Defendants' mini annual review and annual review incorrectly stating Truist Bank was a tenant at the Collateral Property—does not show gross negligence or willful misconduct but is instead "at worst . . . an inadvertent misstatement of fact," for which the MLPA exculpates them. (ECF No. 53 at 15 (citing 52-2 at 13 § 13).) Defendants further argue that the MLPA required Plaintiff Truliant to perform an independent ongoing credit analysis and therefore Plaintiff Truliant cannot "claim justifiable or reasonable reliance upon" as to any alleged misstatement by Defendants. (*Id.* (citing ECF No. 52-2 at 14–15 § 15).)

On the other hand, Plaintiff Truliant points to other evidence of potential gross negligence and willful misconduct on the part of Defendants. (ECF No. 62 at 17–18 (citations omitted).) This evidence supports Defendants alleged failure to monitor Borrower's vacancies in the Collateral Property, collect or retrieve the proceeds of Truist's early termination fee, investigate Borrower's wire transactions, or take note of and report to Participant Lenders the changes in Borrower's ownership and name. (ECF Nos. 61-13 at 103:24–105:19; 61-17 at 1–9; 61-20 at 1–3; 61-21 at 1; 61-24 at 1; *cf.* ECF Nos. 61-4 at 5; 61-16 at 3.) A reasonable jury could conclude based on this evidence that Defendants may have violated the express warranties in the MLPA. Accordingly, Defendants have failed to demonstrate that they are entitled to judgment as a matter of law on Plaintiff Truliant's Breach of Warranty claim.

4.     <u>Defendants are Entitled to Judgment as a Matter of Law on Plaintiff's Breach of the Duty of Good Faith and Fair Dealing Claim</u>

For this claim, Defendants argue they are entitled to summary judgment because they "exercised [their] contractually authorized discretion" to pursue a forbearance agreement with the Borrower, which was validated by a vote of the Participant Lenders. (ECF No. 53 at 16, 16–17.)  In response, Plaintiff incorporates by reference its arguments regarding its earlier breach of warranty claim and makes no particularized factual showing related to this claim. (ECF No. 62 at 18–19.)

Under New York law, "all contracts imply a covenant of good faith and fair dealing in the course of performance." *Singh v. City of New York*, 217 N.E.3d 1, 5, *reargument denied*, 219 N.E.3d 362 (N.Y. 2023) (quoting *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 499 (N.Y. 2002)) (internal quotation marks omitted) (additional citation omitted). However, "[t]he covenant cannot be used to 'imply obligations inconsistent with other terms of the contractual relationship,' and encompasses only those 'promises which a reasonable person in the position of the promisee would be justified in understanding were included.'" *Id.* at 5–6 (quoting *Jennifer Realty Co.*, 773 N.E.2d at 500, 501) (internal quotation marks and citation omitted in original)).  Because the MLPA contains no express duty of good faith and fair dealing, this Court may "imply an obligation of good faith only 'in aid and furtherance of other terms of the agreement of the parties.'" *Id.* at 5 (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983)) (additional citation omitted).  The party asserting that there is "'implied-in-fact covenant bears a heavy burden'" of proof. *Id.* (*Rowe v. Great Atl. & Pac. Tea Co.*, 385 N.E.2d 566, 570 (1978)).

As Defendants argue, the record does not reflect the evidence necessary for this Court to find that there is an implied covenant in the MLPA.  The necessary evidence would "'prove

19

not merely that it would have been better or more sensible to include such a covenant, but rather that the particular unexpressed promise sought to be enforced is in fact implicit in the agreement viewed as a whole.'" *Id.* at 6 (*Rowe v. Great Atl. & Pac. Tea Co.*, 385 N.E.2d 566 (N.Y. 1978)). Defendants argue that no such evidence in the record can make that showing, and Plaintiff does not respond with such a showing. (ECF Nos. 53 at 16–17; 62 at 18–19.)

Accordingly, because the MPLA does not contain an express duty of good faith and fair dealing, and, Plaintiff has failed to carry its burden of showing that such unexpressed promise is implicit in agreement viewed as a whole, no reasonable jury could find that Defendants have breached a duty Plaintiff has been unable to show exists. The Court, therefore, concludes that Defendants are entitled to judgment as a matter of law on Plaintiff's claim of breach of Duty of Good Faith and Fair Dealing.

5.      Defendants Fail to Show that They are Entitled to Judgment as a Matter of Law on Plaintiff's Negligent Misrepresentation Claim

Defendants' arguments for this claim rely on New York law and do not concede that North Carolina law may apply, even in their Reply. (ECF Nos. 53 at 17–20; 66 at 9–11.) As stated above, this claim is governed by North Carolina substantive law. *Volvo*, 386 F.3d at 599–600 (citing *Erie*, 304 U.S. at 79; *Klaxon*, 313 U.S. at 496). Under North Carolina law, negligent misrepresentation requires a showing that (1) "a party justifiably relies," (2) "to his detriment," (3) "on information prepared without reasonable care," (4) "by one who owed the relying party a duty of care." *Rountree v. Chowan Cnty.*, 796 S.E.2d 827, 830 (N.C. Ct. App. 2017) (quoting *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 367 S.E.2d 609, 612 (N.C. 1988)). Under New York law, negligent misrepresentation requires a showing that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that [it] should have known was incorrect; (3) the

20

information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 345 (S.D.N.Y. 2023) (citing *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)).

Though the two torts share similarities, they still require substantially different showings by Plaintiff. *Compare Frio*, 680 F. Supp. 3d at 345 (citation omitted) with *Rountree*, 796 S.E.2d at 830 (citation omitted). This Court cannot grant summary judgment in favor of Defendants based on arguments concerning evidence Plaintiff is not required to show. Accordingly, by relying on incorrect law, Defendants have failed to show that they are entitled to summary judgment on this claim.

6.      Defendants Fail to Show that They are Entitled to Judgment as a Matter of Law on Plaintiff's UDTPA Claim

Defendants argue they are entitled to summary judgment on this claim because the UDTPA is not meant to apply to regulate a "business's internal operations" or "to monitor the internal conduct of individuals within a single market participant, such as the Loan at issue in this matter." (ECF No. 53 at 22.) Plaintiff argues in response that the UDTPA's terms encompass the parties' MLPA dispute. (ECF No. 62 at 24–25.) Plaintiff further argues that summary judgment should not be granted because "[t]he facts support [Plaintiff's] claim that [Defendants] purposefully engaged in self-dealing, . . . refused to participate in the audit, and withheld key information from [Participant Lenders]." (ECF No. 62 at 23.)

To recover under the UDTPA, a plaintiff must show that: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce,

and (3) the act proximately caused injury to the plaintiff."[4]  *Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.*, 891 S.E.2d 100, 120 (2023) (quoting *SciGrip, Inc. v. Osae*, 838 S.E.2d 334, 347 (2020)) (internal citation omitted).  "Commerce" under the statute "includes all business activities, however denominated."  N.C. Gen. Stat. § 75-1.1(b).  Yet, the North Carolina Supreme Court has held that the UDTPA "does not . . . prohibit all wrongful conduct stemming from commercial transactions . . . [and] does not, for example, apply to an individual who merely breaches a contract."  *Bumpers v. Cmty. Bank of N. Virginia*, 747 S.E.2d 220, 226 (2013) (citation omitted).  Further, "any unfair or deceptive practices . . . solely related to the internal operations of, a business will not give rise to a claim under the [UDTPA]."  *Nobel v. Foxmoor Grp., LLC*, 846 S.E.2d 761, 768 (N.C. Ct. App. 2020), *aff'd*, 2022-NCSC-10, 868 S.E.2d 30 (quoting *White v. Thompson*, 691 S.E.2d 676, 679 (N.C. 2010)).

First, this Court is not aware of any case, in this Circuit or in the courts of North Carolina that analyzes whether a participant loan agreement, like the MLPA, is the kind of commercial transaction that the UDTPA was intended to cover.  As Plaintiff notes, there is out-of-circuit authority suggesting that a participation loan agreement may be the relevant kind of commercial transaction.  (ECF No. 62 at 24.)  However, because this authority does not pertain to the statutory language of the UDTPA, this argument is of limited value.

The Court likewise is not convinced by Defendants' argument that MLPA disputes are similar to the internal operations of a business, which does not fall under the UDTPA.  (ECF No. 53 at 22); *see, e.g.*, *White*, 691 S.E.2d at 680 (finding disputes within the confines of a partnership to be outside the scope of the UDTPA).  The MLPA states that Plaintiff's

---

[4] Defendant did not challenge act proximately caused injury to Plaintiff (ECF Nos. 53 at 17–19; 66 at 11–12.)

relationship to Defendants is that of an independent contractor, not a "partnership" or any other similar business relationship. (*See, e.g.*, ECF No. 52-2 at 4 § 7.1.) Nor is the Court convinced by Defendants' other argument that participation in the MLPA is like an investment to raise capital for a business entity. (ECF No. 66 at 11–12); *see, e.g.*, *Hale v. MacLeod*, 904 S.E.2d 142, 155 (2024) (finding a convertible promissory note did not fall under the UDTPA because it "concerned the raising of capital" not "the regular purchase and sale of goods"). Indeed, the MLPA repeatedly states that the agreement governs Plaintiff's *purchase* of an interest in the Loan between Borrower and Defendants. (*See, e.g.*, ECF No. 52-2 at 1, 2 §§ 1–3.) Therefore, in the absence of binding or persuasive authority to suggest otherwise, this Court cannot conclude at this stage of the litigation that Plaintiff's UDTPA claim is barred because of the nature of the commercial transaction between the parties.

As to the remaining elements of Plaintiff's UDTPA claim, Defendants argue that Plaintiff has only put forth evidence of, at most, a breach of contract, which the UDTPA is not meant to address. (ECF No. 66 at 12 (citations omitted).) However, Plaintiff's assertions under the UDTPA appear to be about the *circumstances* of the breach, not the breach alone. (ECF No. 62 at 23–24.) North Carolina courts have held that a Plaintiff need not show "fraud, bad faith, deliberate acts of deception or actual deception" to prevail "but must show that [defendant's] acts had a tendency or capacity to mislead or created the likelihood of deception." *Spartan Leasing Inc. v. Pollard*, 400 S.E.2d 476, 482 (1991) (citing *Chastain v. Wall*, 337 S.E.2d 150, 153–54 (1985), *disc. review denied*, 342 S.E.2d 891 (1986)). Furthermore, unfairness or deception in the circumstances of a breach of contract "may establish the existence of substantial aggravating circumstances sufficient to support an unfair and deceptive trade practices claim." *Id.* (quoting *SciGrip*, 838 S.E.2d 334). Accordingly,

Defendants have failed to show that there are no genuine issues of fact or that they are entitled to judgment as a matter of law on Plaintiff's UDTPA Claim.

7. The Parties' Associated Claims for Declaratory Relief

"In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2018). In the Fourth Circuit, "[t]wo conditions must be satisfied before the Court may issue declaratory relief." *Sys. Application & Techs., Inc. v. United States*, 491 F. Supp. 3d 73, 87 n.9 (D. Md. 2020), *aff'd*, 26 F.4th 163 (4th Cir. 2022) (citing *White v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d 165, 167 (4th Cir. 1990)). The dispute before the Court must be an Article III "case or controversy." *Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d at 167. "Second, the trial court, in its discretion, must be satisfied that declaratory relief is appropriate—the 'prudential' inquiry." *Id.* (citation omitted in original). For the prudential inquiry this Court must consider: "(1) whether the judgment will 'serve a useful purpose in clarifying the legal relations in issue'; or (2) whether the judgment will 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* at 168 (citations omitted).

Because this Court has concluded that Defendants have not established as a matter of law that its actions were validated by the terms of the MLPA where they have been challenged by Plaintiff,[5] summary judgment on Defendants' claims for declaratory relief must also be

---

[5] Although the Court granted judgment as a matter of law to Defendants on Plaintiff's Implied Duty of Good Faith and Fair Dealing claim, it did so on the basis of an absence of evidence by Plaintiff in its Response, not because it found an absence of Defendants' wrongdoing as to the terms of the MLPA. The declaratory relief Defendants seek, (ECF No. 42 ¶¶ 27–35), essentially seeks to validate the entirety of their actions in relation to the MLPA and their interpretation of their exculpation from liability. (ECF No. 42 ¶¶ 29–30, 34–35.) Therefore, this Court's decision in favor of Defendants on Plaintiff's Implied Duty of

denied. Further, the Court will also deny Plaintiff's request for declaratory relief. While the Court has concluded that Defendants did not abide by the terms of § 10(a) of the MLPA, Defendants' overlapping obligations under other sections the MLPA remain at issue, thus, an early declaration of the parties' rights would not "clarify[] the legal relations in issue." *Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d at 168. Instead, a declaration of rights as to § 10(a) of Plaintiff's Breach of Contract claim might confuse a jury about the merits of Plaintiff's remaining grounds for this claim, which is based on alleged violations of at least seven sections of the MLPA, including, but not limited to, § 10(a). (ECF No. 1 ¶ 117 (citing ECF No. 52-2 at 4 § 7.1, 6 § 7.5, 6–7 § 7.7, 7–8 § 7.9, 11–12 § 10(a), 12 § 11, 13 § 13).) For similar reasons, this Court also concludes that the narrow scope of Plaintiff's requested declaratory relief, which only pertains to its audit rights, would not afford Plaintiff relief from the "uncertainty, insecurity, and controversy [that gave] rise to the proceeding." *Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d at 168. Therefore, summary judgment on Plaintiff's related request for declaratory relief must also be denied.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgement, (ECF No. 52), is **GRANTED in part** to the extent that judgment is entered in favor Defendants related to Plaintiff's Implied Duty of Good Faith and Fair Dealing claim, which is hereby **Dismissed.** Defendants' motion is **DENIED** with respect to all other claims brought by Plaintiff and their claims for declaratory relief.

---

Good Faith and Fair Dealing claim cannot be the basis for awarding Defendants' desired declaratory relief. (ECF No. 42 ¶¶ 27–35.)

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment, (ECF No. 54), is **GRANTED in part** to the extent that Plaintiff is entitled to Judgment as a matter of law on its Breach of Contact Claim related to § 10(a) of the MLPA only. Plaintiff's motion is **DENIED** with respect to its request for declaratory relief.

This, the 8th day of April 2025.

/s/ Loretta C. Biggs
Senior United States District Judge